UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PENNY S. LAKE,

       Plaintiff,

                                      CASE NO. 12-CV-14976

v.                                    HONORABLE GEORGE CARAM STEEH

SALVATORE CAVALIERE,
LIFESTYLE LIFTS HOLDING, INC.,
and LIFESTYLE LIFTS HOLDING II,
INC. d/b/a LIFESTYLE LIFTS,

       Defendants.
_____/

OPINION AND ORDER DENYING DEFENDANT
CAVALIERE'S MOTION TO DISMISS (Doc. 14)

On November 9, 2012, plaintiff Penny Lake filed a medical practice action against defendant plastic surgeon Salvatore Cavaliere, D.O., arising out of an allegedly negligent face lift that took place on November 11, 2010. Lake also named as defendants, Cavaliere's alleged employers, Lifestyle Lifts Holding, Inc. and/or Lifestyle Lifts Holding, II (collectively "Lifestyle Lifts"). The allegedly negligent procedure took place at Lifestyle Lift's Troy facility. On January 4, 2013, Cavaliere filed a motion to dismiss for Lake's alleged failure to comply with MCL § 600.2912b which requires that a plaintiff serve a notice of intent (NOI) to bring a medical malpractice claim 182-days prior to filing suit. On March 21, 2013, the court heard oral argument on the motion. At the conclusion of the hearing, the court granted the motion to dismiss from the bench; however, the court vacated that order the next day, allowed the parties additional time to conduct discovery solely on the notice issue, and allowed the parties to file

supplemental briefs after further discovery.  The parties have now done so.  Oral argument was heard on June 27, 2013.  Based on the new evidence presented and for the reasons set forth below, Cavaliere's motion to dismiss shall be denied.

BACKGROUND

As part of the parties' additional discovery on the notice issue, Lake deposed three witnesses: Lisa Slicker, risk manager for Lifestyle Lifts; Cavaliere, and Jonathon Lanesky, an attorney and insurance adjuster assigned to Cavaliere's claim.[1]  Based on the testimony of Slicker and Cavaliere, which confirms that Lake sent the NOI to Cavaliere's prior business address, and confirms that Cavaliere had actual notice of Lake's medical malpractice claim as of June 15, 2012, Lake has shown that she provided Cavaliere with the requisite notice under § 2912b.

Plaintiff's counsel, Joseph Solomon, has submitted an affidavit stating that on February 1, 2012, he mailed via U.S. certified mail, an NOI to what he believed to be Cavaliere's last known business address for his private office at 811 Oakwood Drive, Suite 301, Rochester, Michigan.  (Doc. 27, Ex. 4).  At his deposition, Cavaliere admitted that 811 Oakwood was his prior business address, although he left this location in 2008 (Doc. 27, Ex. 2 at 26).  A Google search for Cavaliere still lists him at that address.  The NOI directed to Cavaliere was returned "not deliverable as addressed unable to forward." On February 1, 2012, Solomon also mailed an NOI by certified mail to Lifestyle Lifts at their Troy location.  That letter alleged that Cavaliere performed the allegedly negligent procedures.  Lisa Slicker, a risk manager for Lifestyle Lifts, stated in

---

[1] Lanesky testified that he did not learn of Lake's medical malpractice claim until November 28, 2012.

her deposition that she received plaintiff's NOI on February 6, 2012 (Doc. 27, Ex. 1 at 9), but she could not remember if she communicated receipt of the NOI to Cavaliere, but she did recall having one conversation with him, although she did not remember when. Id. at 10. The notice sent to Lifestyle Lifts indicated that Cavaliere "is also being sent a notice similar to this letter." Thus, Cavaliere argues, Lifestyle Lifts had no reason to forward the notice to him. At his deposition, however, Cavaliere testified that he remembered talking to Slicker about the potential lawsuit but could not remember exactly when that conversation occurred. (Doc. 27, Ex. 2 at 18). Moreover, on November 21, 2012, Slicker sent an e-mail to Cavaliere stating, "I wanted to let you know that we were recently served with a summons and complaint with respect to Penny Lake. It has been filed in Federal Court and you are named as a defendant as well. If you recall, we previously discussed this matter when they sent us an NOI." (Doc. 27, Ex. 1).

Some time after Cavaliere's NOI was returned undeliverable, plaintiff hired a "skip trace" service, and referenced Cavaliere's 811 Oakwood Drive address to learn that defendant Cavaliere's residential address was 48620 Lorenzo Drive, Macomb, Michigan. On April 5, 2012, plaintiff mailed an NOI to Cavaliere at the Lorenzo address via U.S. certified mail, which was returned "unclaimed." On April 26, 2012, plaintiff sent another NOI via regular U.S. mail to the same address, and did not receive any response. Cavaliere maintains that he has never lived at the Lorenzo address, but rather, his cousin, also named Salvatore Cavaliere, resides at that location.

On May 30, 2012, plaintiff mailed a settlement demand package to Lifestyle Lifts, and at her deposition, Slicker confirmed her receipt of said mailing (Doc. 27, Ex. 1 at

17). That letter clearly provided that Lake was bringing a "medical malpractice claim against Lifestyle Lift and Dr. Salvatore Cavaliere." On June 15, 2012, Slicker e-mailed Cavaliere with an attachment of the May 30, 2012 letter. Cavaliere responded to Slicker's e-mail on June 17, 2012, indicating he objected to her allegations. At his deposition, Cavaliere admitted that he received the June 15, 2012 e-mail advising him of the lawsuit. (Doc. 27, Ex. 2 at 10). Lake never received any response from Cavaliere.

Plaintiff filed this complaint on November 9, 2012, two days prior to the date the statute of limitations period expired under MCL § 600.5805(6), which provides that a medical malpractice claim must be brought within two years after the claim accrues, which in this case was on November 11, 2010 when Lake had the surgical procedure. Lake did not need to file this lawsuit as early as November 11, 2012, however, as Michigan law is clear that the statute of limitations period is tolled from the time that the NOI is sent for "the number of days equal to the number of days remaining in the applicable notice period after the date notice is given." MCL § 600.5856(c). At this point, however, if the court decides that the NOI was inadequate and thus, grants Cavaliere's motion to dismiss, Lake would be time-barred from refiling this lawsuit unless equitable tolling were allowed.

## ANALYSIS

MCL § 600.2912b(1) prohibits the commencement of an action alleging medical malpractice against a health professional unless that health professional is given written notice of the claim 182-days before the action is commenced. MCL § 600.2912b(2) provides:

> (2) the notice of intent to file a claim required under subsection (1) shall be mailed to the last known professional business address or residential address of the health professional or health facility who is the subject of the claim.  Proof of the mailing constitutes prima facie evidence of compliance with this section.  If no last known professional business or residential address can reasonably be ascertained, notice may be mailed to the health facility where the care that is the basis for the claim was rendered.

MCL § 600.2912b(2).

In this case, Lake mailed the NOI to Cavaliere's 811 Oakwood address on February 1, 2012, which Cavaliere admitted at his deposition was a prior professional address.  Similarly, in DeCosta v. Gossage, 486 Mich. 116 (2010), the plaintiff received treatment from an eye doctor at a first location, and then received cataract surgery, which gave rise to the medical malpractice claim, at a new office location.  Id. 119-20.  She mailed the NOI to the old office location where an unknown individual accepted and signed for copies of the NOI and forwarded them to the doctor at his new location.  Id. at 121.  The trial court and the Court of Appeals ruled that plaintiff had failed to satisfy § 2912b because she had not mailed the NOI to the plaintiff's last known business address.  Id.  The Michigan Supreme Court reversed, finding that plaintiff met the requirements of § 2912b even though she did not send the NOI to his last known address, because there was no indication in the record that the new address was the sole address.  Id. at 124.

In finding that the NOI was sufficient although mailed to an old address, the Michigan Supreme Court noted that "[t]he advance-notice requirement encourages settlement of a dispute in lieu of costly litigation, and rigid interpretations of § 2912b do not foster or encourage the statute's goal of advancing settlement and reducing litigation costs." Id. at 122.  In addition, the Supreme Court ruled that to the extent that

plaintiff had failed to meet the exact strictures of the statute, the Court would forgive technical defects because the doctor had received actual notice. Id. at 125. In support of relaxing the strict requirements of § 2912b, the Michigan Supreme Court relied on MCL § 600.2301 which requires that courts disregard defects in proceedings that do not affect the substantial rights of the parties. Id. The court went on to state that even if a defect had been found in the service of process, "it was a minor technical defect in the proceedings because defendants actually received the NOI" and "[s]uch minor technical defects can be cured under MCL § 600.2301." Id. at 125.

Based on the reasoning of DeCosta, equity requires that this court find that the NOI sent in this case satisfies the requirements of § 2912b. On February 1, 2012, Lake sent an NOI to Cavaliere at one of his prior business addresses and to his prior employer, Lifestyle Lifts. The record is ambiguous as to whether or not he received actual notice of the NOI sent to his prior employer, as neither the individual who received the notice at Lifestyle Lift, Slicker, nor Cavaliere himself, could remember exactly if they had discussed that letter, although both admitted they remembered having one telephone conversation with each other. In addition, the November 21, 2012 e-mail from Slicker to Cavaliere stated that they had an earlier conversation about Lake's settlement demand after Lifestyle Lifts had received its NOI. In any event, there is no dispute that Cavaliere received actual notice of Lake's alleged medical malpractice claim based on the June 15, 2012 e-mail from Slicker. At his deposition, he admitted that he received the e-mail, and he responded to the e-mail on June 17, 2012.

Based on the Michigan Supreme Court's admonitions in DeCosta that the purpose of § 2912b, which is to promote prompt settlement of medical malpractice

claims and to limit protracted litigation costs, should not be thwarted by overly technical applications of the notice rule, Lake has satisfied the notice requirement here where she has shown that she mailed the mailed the NOI to a prior business address and Cavaliere did, in fact, receive actual notice.

MCL § 600.2301 requires that this court find that any minor defect in the notice be cured. MCL § 600.2301 provides:

> Sec. 2301. The court in which any action or proceeding is pending, has power to amend any process, pleading or proceeding in such action or proceeding, either in form or substance, for the furtherance of justice, on such terms as are just, at any time before judgment rendered therein. The court at every stage of the action or proceeding shall disregard any error or defect in the proceedings which do not affect the substantial rights of the parties.

MCL § 600.2301. The above quoted rule is clear that the court "shall disregard" any defect that does not affect the substantial rights of the parties. In Bush v. Shabahang, 484 Mich. 156 (2009), the Michigan Supreme Court addressed the question of whether defective content in an NOI, that failed to properly set forth the factual basis for a medical malpractice claim as required under MCL § 600.2912b(4), required dismissal, or whether the defect in the notice could be excused under § 2301. Id. at 177. The court found that dismissal was not warranted where the plaintiff had made a good faith effort to comply with the strictures of § 2912b. Id. at 180-81. The Michigan Supreme Court determined that "the applicability of section 2301 rests on a two-prong test: first, whether a substantial right of a party is implicated and, second, whether a cure is in the furtherance of justice." Id. at 177.

Under the Supreme Court's holding in Bush, Lake has met the two-part test of § 2301, which mandates that any defect here, with regard to strict compliance with §

-7-

2912b, be forgiven. First, the court considers whether Cavaliere's substantial rights would be violated if this court were to excuse a minor good faith defect in the serving of the NOI. Just as in DeCosta, Cavaliere cannot show that any substantial right would be impacted. The court next considers "whether a cure is in the furtherance of justice." In this case, Lake has shown that she made a good faith effort to serve a copy of the NOI on Cavaliere and that he did in fact receive actual notice. In determining whether allowing a minor defect in the notice would be in the interests of justice, this court is guided by the legislative history of § 2912b which the Michigan Supreme Court quoted, as follows, in Bush: "[t]he stated purpose of § 2912b was to provide a mechanism for 'promoting settlement without the need for formal litigation, reducing the cost of medical malpractice litigation, and providing compensation for meritorious medical malpractice claims that would otherwise be precluded from recovery because of litigation costs." 484 Mich. at 174 (citations omitted).

 In this case, Cavaliere received actual notice of Lake's alleged medical malpractice claim long before the lawsuit commenced, thus giving the parties' significant time to discuss settlement before the case was initiated. Under these circumstances, both prongs of § 2301 have been met and Cavaliere's motion to dismiss shall be denied. Moreover, Lake relies on Smith v. Amaria, No. 283229, 2009 WL 793983 (Mich. App. Mar. 26, 2009), where the Michigan Court of Appeals held that "[t]he statute does not specify that the last known address be the official last known address of the defendant, as opposed to an address based on the subjective understanding of the plaintiff." Id. at *2. In that case, the Michigan Court of Appeals found that the notice was sufficient under § 2912b, where the plaintiff submitted notarized proof of service by

mailing, even though the letter was sent return receipt requested, there was no signed receipt, and defendant denied receiving actual notice. Id. In Armania, the plaintiff had used the address on a prior occasion so the court of appeals found that the plaintiff's subjective understanding was reasonable. Id. The court further noted that all that the statute requires is proof that the mailing took place, not receipt by the defendant. Id. Likewise, in this case, Lake's subjective belief that the 811 Oakwood address was the last known business address was reasonable where Cavaliere had recently worked at that location and a current Google search still identifies Cavaliere as being at that location. Lake also correctly relies on the provision of § 2912b which states that "[p]roof of the mailing constitutes prima facie evidence of compliance with this section." Lake relies on the affidavit of her counsel that the NOI was sent to Cavaliere to the Rochester address on February 1, 2012. This is sufficient to satisfy § 2912b.

II.     Lake Satisfied the Statutory Notice Period

Having conceded that he did in fact receive actual notice of this lawsuit on June 15, 2012, Cavaliere argues that Lake did not wait the requisite 182-days following that date prior to filing suit. Cavaliere's argument lacks merit. The date that the doctor received notice is not the triggering date. MCL § 600.2912b does not require that the 182-days begin upon *receipt* by the defendant physician, but specifies that the time period begins to run on the date that the notice is *mailed*. Thus, Cavaliere's reliance on opinions describing the 182-day waiting period under § 2912b(1) as mandatory[2] fail to support his claim that the complaint was filed prematurely here. The NOI was sent to

---

[2] Burton v. Reed City Hosp. Corp., 471 Mich. 745 (2005); Omelenchuk v. City of Warren, 461 Mich. 567 (2000).

Cavaliere on February 1, 2012, 280 days before he filed suit. Thus, Lake properly waited more than 182 days following the mailing of the NOI to Cavaliere.[3]

III.     Alleged Defect in the Content of the Notice

In his supplemental response, Cavaliere objects, for the first time, to the content of the notice given in the letter dated May 30, 2012. This new argument exceeds the scope of the supplemental briefing authorized by the court, which was to address solely the issue of the adequacy of the notice given under § 2912b. The matter was not argued in Cavaliere's motion to dismiss, was not heard at oral argument, and Lake has never replied to the argument on the merits. According to the general rule that new arguments raised for the first time in a reply brief are not properly before the court, the argument is deemed waived. See Scottsdale Inc. Co. v. Flowers, 513 F.3d 546, 553 (6th Cir. 2008); International-Matex Tank Terminals-Illinois v. Chemical Bank, No. 08-1200, 2009 WL 1651291, *2 (W.D. Mich. June 11, 2009) (collecting cases).

Even were the court to consider the new argument on the merits, it is not a proper basis for dismissal. Cavaliere argues that the letter is defective because it failed to allege with sufficient specificity the factual basis for the claim as required under MCL § 600.2912b(4) which provides:

> The notice given to a health professional or health facility under this section shall contain a statement of at least all of the following:

---

[3] Moreover, although the DeCosta decision did not expressly discuss whether plaintiff waited the requisite 182-days in that case, according to this court's calculations, the lawsuit was filed 172 days after the NOI was mailed, and only 167 days after actual notice was received. DeCosta, 486 Mich. at 120-21. In this case, Cavaliere admits to actual notice on June 15, 2012, which was nearly five months prior to the filing of the lawsuit. Cavaliere had a substantial amount of time to discuss settlement, if he had wanted to, but he did not.

-10-

> (a) The factual basis for the claim.
>
> (b) The applicable standard of practice or care alleged by the claimant.
>
> (c) The manner in which it is claimed that the applicable standard of practice or care was breached by the health professional or health facility.
>
> (d) The alleged action that should have been taken to achieve compliance with the alleged standard of practice or care.
>
> (e) The manner in which it is alleged the breach of the standard of practice or care was the proximate cause of the injury claimed in the notice.
>
> (f) The names of all health professionals and health facilities the claimant is notifying under this section in relation to the claim.

MCL § 600.2912b(4). Cavaliere reads too much into the requirements of §2912b(4). The May 30, 2012 letter clearly provided that the malpractice claim related to Lifestyle Lifts and Cavaliere, that the basis for the claim was negligent plastic surgery, and that Cavaliere's conduct fell below the standard of care because board certified plastic surgeon, Michael Milan, M.D., reviewed the case and determined "that Dr. Cavaliere was negligent in the manner in which he performed liposuction, suturing techniques and skin layers, all of which caused significant damage to my client's neck and face. In researching other complaints filed against Lifestyle Lift[s], substandard care is not an anomaly." The letter further discusses Lake's treatment and provides that Lake's family physician "referred [her] to infectious disease Dr. Duggan and board certified plastic surgeon Dr. Colville. Dr. Duggan confirmed that Ms. Lake developed MSRA at various surgical sites in her face and neck. Dr. Colville performed additional surgery to drain these sites and attempted to minimize scarring as a result of Dr. Cavaliere's substandard surgical techniques." The letter references an affidavit of Milan but

-11-

Cavaliere states it is unclear whether or not the affidavit was actually attached to the letter. This point is insignificant as the letter and affidavit are virtually the same.

The February 1, 2012 NOI sent to Cavaliere at his prior address contained a similar description of Lake's alleged malpractice claim. Cavaliere has not shown that the content of the notice given in either the May 30, 2012 letter or the February 1, 2012 letter, was deficient, but even if he had done so, the alleged deficiency was not done in bad faith, and thus, is excusable. In Bush, the Michigan Supreme Court ruled that "only when a plaintiff has not made a good-faith attempt to comply with § 2912b(4) should a trial court consider dismissal of an action without prejudice." Bush, 484 Mich. at 156. Because any good faith defect in the content of the NOI is excusable, and an incomplete description of the malpractice alleged in an NOI does not ordinarily amount to the loss of a substantive right to the doctors involved, § 2301 requires that the rigid requirements of § 2912b(4) may be relaxed in the "furtherance of justice."

Cavaliere argues that the holding of Bush does not save Lake's defective NOI because Cavaliere received no timely NOI. Cavaliere's argument lacks merit. As this court has discussed above, Lake's counsel submitted an affidavit that he mailed a copy of the NOI to Cavaliere's Rochester business address on February 1, 2012, and that is sufficient to meet the demands of § 2912b(2), especially when considered in tandem with the fact that Cavaliere received actual notice of Lake's alleged malpractice claim.

Cavaliere's reliance on Davis v. Naini, 490 Mich. 239 (2011) also is misplaced. In Davis, the Michigan Supreme Court held that a plaintiff could not bring a time-barred malpractice claim against a new defendant based on a timely NOI letter sent to other properly named defendants. Id. at 250-59. The Michigan Supreme Court explained

-12-

that allowing the plaintiff to add new defendants to the complaint without serving them with an NOI would lead to the inequitable result of plaintiffs being able to circumvent the statute of limitations to bring in an "infinite number of potential nonparty defendants by simply submitting an NOI to a single defendant." Id. at 258. There is no similar danger here. Lake mailed a timely NOI to Cavaliere on February 1, 2012, more than 182-days prior to the filing of her lawsuit.

## CONCLUSION

Because Lake acted in good faith in her efforts to send the NOI to Cavaliere by mailing the NOI to Cavaliere's prior business address, and where Cavaliere admittedly had actual notice of Lake's alleged medical malpractice claim, defendant's motion to dismiss for alleged failure to serve the NOI (Doc. 14), or for alleged defects in the content of the NOI, hereby is denied.

**IT IS SO ORDERED**.

Dated: July 3, 2013

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 3, 2013, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---